**THE RUDD LAW FIRM**
Christopher L. Rudd (SBN 130713)
E-mail: clrudd@ruddlawla.com
4650 Sepulveda Boulevard, Suite 205
Sherman Oaks, CA 91403
Tel.: 310.663.0705
Fax: 310.359.0258

*Counsel for Plaintiff and the Proposed Class*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY WHITTINGTON, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KIDSEMBRACE, LLC, a California limited liability company,<br><br>Defendant. | Case No.: 2:21-cv-1830<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>(1) Common Law Fraud;<br>(2) Quasicontract;<br>(3) Negligent Misrepresentation;<br>(4) Violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.*<br><br>**JURY TRIAL DEMANDED** |

Plaintiff TIFFANY WHITTINGTON ("Plaintiff"), on behalf of herself and all others similarly situated, brings this action against KidsEmbrace, LLC ("KidsEmbrace") for its misleading marketing and sale of defective booster seats to Plaintiff and other consumers resulting in violation of state consumer statutes and common law.

Plaintiff's allegations are based upon personal knowledge as to herself and her own actions, and upon information and belief as to all other matters.

## I.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in

which some members of the proposed Class (including Plaintiff) are citizens of a state different from KidsEmbrace.

2.     This Court has personal jurisdiction over KidsEmbrace because it transacts business in the United States, including in this District, has substantial aggregate contacts with the United States, including in this District, engaged in conduct that has had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposefully availed itself of the laws of the United States.

3.     In accordance with 28 U.S.C. § 1391, venue is proper in this District sue a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, and KidsEmbrace transacts business in and is headquartered in this District.

## II.     PARTIES

### a.     <u>Defendant</u>

4.     Defendant KidsEmbrace, LLC is a California limited liability company with its principal place of business at 6711 Odessa Avenue, Van Nuys, California 91406. Plaintiff is informed and believes, and upon such information and belief alleges, that KidsEmbrace has a sole member, its manager, who is a citizen of California, and that if KidsEmbrace has more than one member (or its sole member is not its manager), then at least one member of KidsEmbrace is a citizen of a state other than North Carolina. KidsEmbrace designs, manufactures, markets, sells, and distributes the Booster Seats throughout the United States.

### b.     <u>Plaintiff</u>

5.     Plaintiff Tiffany Whittington is a citizen of the State of North Carolina, residing in Jamestown, North Carolina.

6.     In or around December, 2020, Plaintiff bought two (2) KidsEmbrace DC Comics Batman Highback booster seats online from Amazon for her son who weighed less than 40 pounds at the time of purchase. Plaintiff decided to buy the

Booster Seat based in part on KidsEmbrace's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff chose the Booster Seat. At the time of purchase, Plaintiff did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff aware that there are no federal standards for side-testing of booster seats.

7.      Indeed, Plaintiff would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff stopped using the Booster Seat. Plaintiff Whittington has suffered a concrete injury as a direct and proximate result of KidsEmbrace's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had KidsEmbrace not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

## III.   NATURE OF THE ACTION

8.      KidsEmbrace manufactures and markets children's products, including infant car seats and booster seats. In the early 2000s, KidsEmbrace introduced its "Highback" booster car seat for children as light as 30 pounds.

9.      KidsEmbrace's Highback booster car seats (the "Booster Seats") are designed to raise children up to the proper height for the seatbelt. The Booster Seats are not equipped with five-point harness restraints.

1

<u>KidsEmbrace Highback</u>



10.    Although KidsEmbrace labeled and marketed the Booster Seats in the United States as (1) "side impact tested" and (2) safe for children as light as 30 pounds and as young as three-years-old, KidsEmbrace has known for decades that these statements are false and misleading. The Booster Seats do not appreciably reduce the risk of serious injury or death from side-impact accidents, its testing does not show that the Booster Seats are safe in a side-impact collision, and the Booster Seats are not safe for children under 40 pounds or under four-years-old.

11.    KidsEmbrace omitted and concealed material facts about the Booster Seats from its marketing including: (1) KidsEmbrace's side-impact testing did not comply with federal standards because no such standards exist; (2) the testing did not show that the Booster Seats were safe in a side-impact collision; (3) the Booster Seats in fact would not provide any appreciable safety to their child occupants in the event of a side-impact crash; and (4) the Booster Seats were not suitable for children under 40 pounds.

12.    Since 1987, Canada has prohibited the use of booster seats for children under 40 pounds; instead, those children must be placed in car seats with a

five-point harness.[1]

13.     In the United States, the National Highway Traffic Safety Administration ("NHTSA") warns against using any booster seat for any child weighing less than 40 pounds, noting that such use can endanger those children. Instead, NHTSA cautions that parents should continue to use seats that have an internal five-point harness until the child reaches 40 pounds.[2] A 2009 NHTSA study recognized that "[t]he primary reasons for injuries to children restrained at the time of motor vehicle crashes" include "premature graduation from harnessed safety seats to booster seats."[3] In 2010, NHTSA issued a report reiterating, "[f]orward-facing (convertible or combination) child seats are recommended for children age 1 to 4, or until they reach 40 lbs," and finding that, "[e]arly graduation from child restraint seats (CRS) to booster seats may also present safety risks."[4] Numerous U.S. safety organizations advise parents to continue to put their children in forward-facing child seats until they reach 40 pounds.

14.     Nevertheless, KidsEmbrace sought to increase its sales and market share by falsely claiming that parents can safely transition their children from child restraint seats to Booster Seats once they reach 30 pounds, even though scientific and crash test evidence proves that to be extremely risky and unsafe.

---

[1] *See* Daniela Porat, Patricia Callahan, *Evenflo, Maker of the "Big Kid" Booster Seat, Put Profits Over Child Safety*, PROPUBLICA (Feb. 6, 2020), available at https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety (hereinafter, "ProPublica") (last visited Oct. 15, 2020).
[2] *See*, NHTSA, "Booster Seat Effectiveness Estimates Based on CDS and State Data," https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811338 (July 2010) (last visited Nov. 16, 2020).
[3] *See* K.E. Will, et al., "Effectiveness of Child Passenger Safety Information For the Safe Transportation of Children," (NHTSA 2015) at 1, available at https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/812121-safe_transportation_of_children.pdf (citing Arbogast et al., "Effectiveness of belt positioning booster seats: An updated assessment" (2009) (last visited Nov. 1, 2020)).
[4] *See* NHTSA, "Booster Seat Effectiveness Estimates Based on CDS and State Data," https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811338 (July 2010) (last visited Nov. 1, 2020).

15.     On its website and in its marketing materials, KidsEmbrace claims that the Booster Seats provide substantial side-impact safety as supported by side-impact testing.[5] KidsEmbrace presents its tests as tough, exceeding government requirements, and meeting or exceeding child restraint criteria under Federal Motor Vehicle Safety Standard 213 ("FVMSS 213").

16.     However, there are no federal standards for side-testing of booster seats. In reality, KidsEmbrace designs its own tests. Its tests merely involve a booster seat on a bench moving sideways at 20 miles per hour and then decelerating without impact.[6]

17.     A federal investigation of KidsEmbrace revealed that KidsEmbrace represents that it side-impact testing covered all KidsEmbrace products, including the Booster Seats, but it applies only to a limited range of combination booster seats that convert from a car seat with a 5-point harness to a booster seat, and those combination seats are only tested in the harness configuration, not the booster configuration."[7]

18.     Independent tests performed at the Medical College of Wisconsin, a lab that also performs tests for federal researchers, reveal that when a booster seat similar to the Booster Seat is side-impact tested using the typical force of a side-

---

[5] *See* "KidsEmbrace SAFTY Certificates and Awards," available at https://www.kidsembrace.com/pages/safety-is-1-for-kidsembrace#:~:text=Additionally%2C%20KidsEmbrace%20combination%20Booster%20Car,parents%20to%20make%20safety%20fun (last visited January 20, 2021) ("Additionally, KidsEmbrace combination Booster Car Seats are side-impact tested, a non-requirement within the U.S. and Canada, which has been deemed a company requirement to ensure we go above and beyond empowering parents to make safety fun.").

[6] U.S. House Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy. *Booster Seat Manufacturers Give Parents Dangerous Advice: Misleading Claims, Misleading Safety Testing, and Unsafe Recommendations to Parents About When They Can Transition Their Children from Car Seats to Booster Seats* (116th Congress., Dec. 12, 2020) at 14; available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-12-10%20Subcommittee%20on%20Economic%20and%20Consumer%20Policy%20Staff%20Report%20on%20Booster%20Seat%20Investigation.pdf (last accessed February 25, 2021).

[7] *Id.*

impact collision, the child-sized crash dummies properly positioned are thrown far outside the boundaries of the booster seat.[8]

19.     KidsEmbrace knew or should have known the dangers posed by side-impact crashes to children seated in the Booster Seats and the proper side-impact testing of similar booster seats demonstrates the presence of those dangers rather than showing that the Booster Seats are safe. For example, in a side impact test conducted by experts in a case against Graco brought by a family whose child was



permanently injured after suffering a collision while riding in a TurboBooster, the child-sized test-dummy was violently thrown outside the boundaries of the TurboBooster. According to the expert who viewed the video, the seat allowed "severe head and torso excursion."[9]

20.     Nonetheless, KidsEmbrace, continues to market its Booster Seats as safe for children weighing less than 40 pounds, and continues to market its Booster Seats as "SIDE IMPACT TESTED," posting on its website the following "certificate":[10]

---

[8] *See* ProPublica, *infra* n.1.
[9] Restraint System Analysis Report at 33, *McCune v. Graco Children's Products Inc.*, No 5:2009cv00107 (E.D. Tex. June 6, 2011), ECF. No. 97-5.
[10] *See* "KidsEmbrace SAFETY Certificates and Awards," available at https://outlook.office365.com/owa/aspenpointe@masonllp.com/groupsubscription.ashx?action=join&source=MSExchange/LokiServer&guid=2e3aee23-867e-4a51-bb99-284c92c84b60 (last visited Feb. 3, 2021) ("KidsEmbrace products have

21.     Had KidsEmbrace truthfully disclosed and reported that the safe weight range of its Booster Seats was above 40 pounds, no parent would have purchased the Booster Seats for a child weighing less than 40 pounds. Similarly, no parent would have purchased the Booster Seats, if KidsEmbrace had truthfully disclosed and reported that the side-impact testing it conducted did not actually establish the safety of its Booster Seats in a side-impact collision, that the testing did not comply with federal standards because no such standards exist, and that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash. Instead, KidsEmbrace failed to disclose the proper weight range and insufficient and ineffective side-impact testing. KidsEmbrace further embarked on a disinformation campaign aimed at convincing millions of consumers that its Booster Seats are safe for children as light as 30 pounds and that they provide appreciable safety to occupants in side-impact collisions.

22.     On December 10, 2020, the United States House of Representatives' Subcommittee on Economic and Consumer Policy issued a staff report entitled Booster Seat Manufacturers Give Parents Dangerous Advice: Misleading Claims, Misleading Safety Testing, and Unsafe Recommendations to Parents About When They Can Transition Their Children from Car Seats to Booster Seats. The report details the Subcommittee's findings concerning the safety of child booster seats marketed in the United States. The Subcommittee focused its investigation on

tested for side impact environments suggested by the National Highway Traffic Safety Administration (NHTSA), something the competition doesn't do. We have designed the head support to be deep and large in order to maximize its side impact protection.").

seven of the nation's largest booster seat manufacturers, including KidsEmbrace.[11]

23.   The report concludes that KidsEmbrace and other manufacturers of booster seats, "have endangered the lives of millions of American children and misled consumers about the safety of booster seats by failing to conduct appropriate side-impact testing, deceiving consumers with false and misleading statements and material omissions about their side-impact testing protocols, and unsafely recommending that children under 40 pounds and as light as 30 pounds can use booster seats."[12]

24.   Plaintiff brings this proposed class action for damages and injunctive relief on behalf of themselves and all other persons and entities nationwide who purchased a Booster Seat. Plaintiff brings this class action for violations of relevant state consumer protection statutes, consumer fraud, breach of warranty, common law fraud, and unjust enrichment. Plaintiff seeks injunctive and declaratory relief, damages, interest, costs and reasonable attorneys' fees.

## IV.   GENERAL FACTUAL ALLEGATIONS

### a.   <u>Background of KidsEmbrace</u>

25.   KidsEmbrace is one of the leading manufacturers and marketers of infant and juvenile products, including the Booster Seats. KidsEmbrace sells its products through national retail stores such as Walmart and Target, as well as online via Amazon.com, and direct-to-consumer through its website KidsEmbrace.com.

---

[11] U.S. House. Committee on Oversight and Reform. Subcommittee on Economic and Consumer Policy. *Booster Seat Manufacturers Give Parents Dangerous Advice: Misleading Claims, Misleading Safety Testing, and Unsafe Recommendations to Parents About When They Can Transition Their Children from Car Seats to Booster Seats.* (116th Congress). Text from: https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-12-10%20Subcommittee%20on%20Economic%20and%20Consumer%20Policy%20Staff%20Report%20on%20Booster%20Seat%20Investigation.pdf (last accessed February 25, 2021).
[12] *Id.*

**b.** **The Development of Car Seats**

26.    The first child restraint systems were introduced in 1968, and the first child passenger safety law was passed in Tennessee ten years later.

27.    In the late 1970s, the U.S. public's increasing awareness of the high rates of morbidity and mortality for child passengers resulted in rapid proliferation of state laws on the issue.

28.    Between 1977 and 1985, all fifty states adopted laws aimed at reducing harm to infants and child passengers by requiring the use of a child restraint device.[13]

29.    In the early 1980s, states started requiring crash testing for car seats.

30.    There is and has been a wealth of industry data, recommendations, and "best practice" guidelines not readily available to consumers about the appropriate weight range for children to use booster seats.

31.    For example, the "1989 AAP Car Safety Guidelines" recommended keeping a child in a convertible seat "for as long as possible" and using booster seats only for children 40 pounds and over.

32.    On information and belief, KidsEmbrace knew about a NHTSA flier pending approval in 1992 that stated: "A toddler over one year of age, weighing 20 to 40 pounds, is not big enough for a booster seat in a car. He needs the extra protection for his upper body and head that a harness with hip and shoulder straps can give." This flier was included in a 1996 safety study issued by the National Transportation Safety Board.[14]

---

[13] *See id.*
[14] National Transportation Safety Board, Safety Study, *The Performance And Use Of Child Restraint Systems, Seat Belts And Airbags For Children In Passenger Vehicles, Volume 1: Analysis.* NTSB/SS – 96/01. (1996) https://books.google.com/books?id=Ufw5AQAAMAAJ&pg=PA125&lpg=PA125 &dq=%22A+toddler+over+one+year+of+age,+weighing+20+to+40+pounds,+is+n ot+big+enough+for+a+booster+seat%22&source=bl&ots=_CgFFf67VI&sig=ACf U3U0sxpAZJs_K01GyMYG   - ivhhjuFA&hl=en&sa=X&ved=2ahUKEwiRicD4moXtAhXBGs0KHfxGDccQ6AE wAHoECAIQAg#v=onepage&q&f=false.

33.     Beginning in the 1990s, NHTSA and professional associations like the American Academy of Pediatrics ("AAP") developed child passenger safety standards and guidelines that cover a wider range of child passenger safety issues to better protect children from injuries. Among other things, they emphasized the importance of three types of safety practices to protect children: (1) device-based restraints tailored to the age/size of individual child passengers; (2) rear-facing seats; and (3) seatbelts for children who outgrew child restraint devices.

34.     In the early 2000s, the CDC and many states began passing regulations requiring toddlers who were too small to be protected by regular seat belts to use child safety seats. In 2000, Massachusetts and California implemented laws requiring booster seats for children over 40 pounds.

35.     In 2010, NHTSA issued a report reiterating that "[f]orward-facing (convertible or combination) child seats are recommended for children age 1 to 4, or until they reach 40 lbs" and finding that "[e]arly graduation from child restraint seats (CRS) to booster seats may also present safety risks."[15] These recommended convertible or combination safety seats use integrated harnesses, rather than seatbelts, to keep children in place.

36.     And in 2011, the AAP revised its 1989 Policy Statement, issuing a best practice recommendation that children from 2 to 8 years of age should remain in convertible or combination child safety seats, so long as their weight was less than the limit for the seats. NHTSA updated its guidelines shortly thereafter to reflect the AAP's recommendations:[16]

---

[15] *See* NHTSA, "Booster Seat Effectiveness Estimates Based on CDS and State Data," https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811338 (last visited Oct. 25, 2020).
[16] *See* NHTSA, "NHTSA Releases New Child Seat Guidelines" (March 21, 2011), available at https://one.nhtsa.gov/portal/site/NHTSA/menuitem.554fad9f184c9fb0cc7ee21056b67789/?vgnextoid=47818846139ce210VgnVCM10000066ca7898RCRD&vgnextchannel=c9f64dc9e66d5210VgnVCM100000656b7798RCRD&vgnextfmt=default.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16   37.   According to the AAP, the most recent evidence-based, best practices
17   for optimizing passenger safety include:

18   i.   All infants and toddlers should ride in a rear-facing car safety
19   seat as long as possible, until they reach the highest weight or
20   height allowed by their car seat manufacturer. Most convertible
21   seats have limits that will permit children to ride rear-facing for
22   2 years or more.

23   ii.   All children who have outgrown the rear-facing weight or height
24   limit for their seat should use a forward-facing seat with a
25   harness for as long as possible, up to the highest weight or height
26   allowed by the manufacturer.

27   iii.   All children whose weight or height exceed the forward-facing
28   limit for their car seat should use a belt-positioning booster seat

until the vehicle lap and shoulder seat belt fits properly, typically when they have reached 4 feet, 9 inches in height and are between 8 and 12 years of age.[17]

38.     While car seat recommendations have changed, the AAP has long embraced one central principle: parents should not move children from a harnessed seat to a booster seat until they reach the maximum weight or height of their harnessed seat. Specifically, since the early 2000s, the AAP has advised that children who weigh 40 pounds or less—at the time, the weight limit of most harnessed seats—are best protected in a seat with its own internal harness. Today, almost all harnessed seats can accommodate children up to 65 pounds and as tall as 4 feet, 1 inch, and some fit children up to 90 pounds.

39.     And even this 40-pound threshold is no longer considered ideal. Since 2011, the AAP has recommended (consistent with the above) that children stay in harnessed seats "as long as possible"—that is, in many cases, until they are 65 pounds (and in some cases up to 90 pounds).

40.     These thresholds are crucial because, according to scientific consensus, booster seats do not adequately protect toddlers. To deliver its full safety benefit in a crash, an adult seat belt must remain on the strong parts of a child's body—i.e., across the middle of the shoulder and the upper thighs. Even if young children are tall enough for a belt to reach their shoulders, they rarely sit upright for long and often wriggle out of position.

41.     By contrast, a tightly adjusted five-point harness secures a child's shoulders and hips, and goes between the legs. Harnesses secure children's bodies so that they are less likely to be ejected, and they disperse crash forces over a wider area.

---

[17] *See* Dennis R. Durbin et al., *Child Passenger Safety*, 142(5) PEDIATRICS (2018), available at https://pediatrics.aappublications.org/content/142/5/e20182460 (last accessed Feb. 25, 2021).

**c.** **KidsEmbrace Booster Seats**

42.     KidsEmbrace launched the Highback to address the market for young children who were too large for a child harness car seat, but who were still too small to properly fit in a seat belt. The Highback elevated children so that the automobile seat belt system fit more securely.

**d.** **Despite Conclusive Evidence That Its Products Are Dangerous For Children Within The Weight Range It Specifies, KidsEmbrace Markets Its Booster Seats As Safe For Children Under 40 Pounds and Side-Impact Tested.**

43.     KidsEmbrace represented to consumers that the Booster Seats "can be used for children over 3 years old, 30 to 100 pounds and 38 to 57 inches in height" and have been tested "for side impact environments suggested by the National Highway Traffic Safety Administration (NHTSA), something the competition doesn't do." [18]

44.     But these claims are false. KidsEmbrace has long known that children under 40 pounds were at risk of serious injury and death if they were riding in a Booster Seat during a car crash, and yet it still marketed its Booster Seats as safe for children weighing as little as 30 pounds.

45.     Canada has prohibited the use of booster seats for children under 40 pounds since 1987.[19]

46.     Ignoring the nationally-recognized safety guidelines and best practices for booster seats available to the industry allowed KidsEmbrace to increase its share of the booming booster seat market.

---

[18] *See* "KidsEmbrace SAFETY Certificates and Awards," available at https://www.kidsembrace.com/pages/safety-is-1-for-kidsembrace (last visited Feb. 3, 2021) ("KidsEmbrace products have tested for side impact environments suggested by the National Highway Traffic Safety Administration (NHTSA), something the competition doesn't do. We have designed the head support to be deep and large in order to maximize its side impact protection.").

[19] *See* ProPublica, *Supra* n.1.

47.     By advertising the 30-pound minimum weight, KidsEmbrace deliberately intended to convince parents to move their small children out of child harness restraint systems and into the Booster Seats, generating enormous profits for KidsEmbrace while endangering children.

**e.     KidsEmbrace Continues to Market Its Booster Seats As Safe For Children Under 40 Pounds.**

48.     KidsEmbrace advertises on its website that its Booster Seats are safe for children as light as 30 pounds.[20]

49.     On Amazon.com, KidsEmbrace continues to tell parents that its Booster Seats are "designed for children a minimum of 3 years old, weighing 30-100lbs., and measuring 38" to 57" in height."[21]

**f.     KidsEmbrace Markets Its Booster Seats As "Side Impact Tested" And Safe For Children Under 40 Pounds, Despite Conclusive Contrary Evidence From Side-Impact Testing.**

50.     KidsEmbrace "SAFETY Certificates and Awards" page boasts that the Booster Seats "have tested for side impact environments suggested by the National Highway Traffic Safety Administration (NHTSA) …" and that "[w]e have designed the head support to be deep and large in order to maximize its side impact protection." [22]

51.     Even the design of the Booster Seat is intended to deceive the consumer. KidsEmbrace designed the headrests of its Booster Seats with small pieces of material that extend forward from the backrest to give the illusion of

---

[20] KidsEmbrace, *KidsEmbrace DC Comics Batman High Back Booster Car Seat* (online at www.kidsembrace.com/collections/all-kidsembrace-booster-seats/products/kidsembrace-dc-comics-convertible-batman-high-back-booster-car-seat) (accessed Feb. 3, 2021).
[21] See https://www.amazon.com/KidsEmbrace-High-Back-Booster-Marvel-Spider-Man/dp/B019DHBWES/ref=sr_1_1?crid=2LJASAO1UI0UD&dchild=1&keywords=kidsembrace+high-back+booster+car+seat&qid=1612375330&sprefix=kidsembrace%2Caps%2C147&sr=8-1 (last visited Feb. 3, 2021).
[22] https://www.kidsembrace.com/pages/safety-is-1-for-kidsembrace (last visited Feb. 3, 2021).

providing additional protection.

52.     Although KidsEmbrace knew—but did not disclose—that these headrests provide no actual security against side-impacts, KidsEmrace continues to misrepresent their safety features. Specifically, KidsEmbrace falsely assures parents that the side-impact tested is a non-requirement "to ensure we go above and beyond empowering parents to make safety fun" and "meet or exceed government safety standards"[23]

53.     What KidsEmbrace did not tell consumers is that *the federal government has no side-impact testing rules or standards for child safety seats*. As a result, KidsEmbrace's representations that its Booster Seats surpass a non-existent side-impact testing standard are misleading. Currently, the only government-issued crash test standard simulates head-on collisions. KidsEmbrace took advantage of this regulatory gap and seized the opportunity to devise its own side-impact testing and concealed its specifics from consumers.

54.     A Child Restraint System must comply with FMVSS 213 to be sold it in the U.S. market, but that standard does not apply to side-impact testing. Even if it did, FMVSS 213 is a *minimum* performance standard and manufacturer self-certify whether they meet this very low standard.

55.     In truth, KidsEmbrace's side-impact tests were insufficient, with no reasonable standard whatsoever

56.     KidsEmbrace's foregoing representations regarding safety, testing, and its supposed surpassing of federal government safety standards are materially false and misleading for all of the reasons discussed above.

57.     Similarly, KidsEmbrace's concealment and omission of the inherent dangers in using the Booster Seats with children under 40 pounds, the inadequacy of KidsEmbrace's side-impact testing, the Booster Seats' lack of stability and containment in side-impacts, and/or the Booster Seats' complete lack of side-

---

[23] *Id.*

impact protection, are materially misleading.

**g.** **U.S. House of Representatives' Investigates Misleading Marketing Tactics Used by Booster Seat Manufacturers**

58. On December 10, 2020, the United States House of Representatives' Subcommittee on Economic and Consumer Policy issued a staff report on the marketing tactics used by seven of the nation's largest booster seat Manufacturers, including KidsEmbrace.[24]

59. As part of the Subcommittee investigation, staff members analyzed "thousands of pages of previously non-public documents from those seven companies, including internal records detailing side-impact testing protocols; written results of side-impact tests; videotapes of side-impact tests; and internal communications regarding marketing, instructions, and safety labeling."[25]

60. The Subcommittee concluded that the marketing practices of Defendant and other booster seat manufacturers were misleading with respect to safety. In particular, the Subcommittee made the following findings concerning KidsEmbrace:

- ". . . KidsEmbrace . . . deceptively market their booster seats as 'side-impact tested.' The manufacturers have created their own weak testing conditions, which do not even involve an impact. The tests do not measure occupant safety. Instead, the manufacturers grade their booster seats' performance on a standard that it [sic] nearly impossible to fail."[26]

- KidsEmbrace's "marketing [of] booster seats as 'side-impact tested,' under these circumstances misleads consumers into believing that the booster seats passed meaningful impact tests, which they did not. It appears from simulations with

---

[24] U.S. House. Committee on Oversight and Reform. Subcommittee on Economic and Consumer Policy. *Booster Seat Manufacturers Give Parents Dangerous Advice: Misleading Claims, Misleading Safety Testing, and Unsafe Recommendations to Parents About When They Can Transition Their Children from Car Seats to Booster Seats.* (116th Congress). Text from: https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-12-10%20Subcommittee%20on%20Economic%20and%20Consumer%20Policy%20Staff%20Report%20on%20Booster%20Seat%20Investigation.pdf. Accessed: 12/10/20.
[25] *Id.*
[26] *Id.*

test dummies that side-impact collisions would result in severe injuries to children."[27]

- "KidsEmbrace falsely claims that all of its booster seat models are side-impact tested, when in fact they are not."

- Although KidsEmbrace "advertised [its] booster seats as 'Side-impact tested,' they were not. … [KidsEmbrace] tests merely involve a booster seat on a bench moving sideways at 20 miles per hour and then decelerating without impact."[28]

- KidsEmbrace admitted in a response letter to the Subcommittee that it does not side-impact test its booster seats at all. Yet, on its website, KidsEmbrace gives the misleading impression that all of its seats, including boosters, are side-impact tested. KidsEmbrace tells consumers, "KidsEmbrace products have tested for side impact environments suggested by the National Highway Traffic Safety
Administration (NHTSA), something the competition doesn't do."[43] The statement purports to cover all KidsEmbrace products, but it applies only to a limited range of combination booster seats that convert from a car seat with a 5-point harness to a booster seat, and those combination seats are only tested in the harness configuration, not the booster configuration."[29]

61.    The Subcommittee also observed that consumers reasonably rely on the deceptive marketing practices of KidsEmbrace and other booster seat manufacturers: "When manufacturers claim that a booster seat is "side-impact tested," a consumer would believe that the booster seat went through a realistic crash simulation that showed that the booster seat meaningfully protected the occupant from injury."[30]

## V.    TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

62.    KidsEmbrace had actual knowledge for several years that the marketing, packaging, and labeling of its Booster Seats was deceptive and misleading because its internal and undisclosed side-impact tests confirm that the Booster Seats pose serious safety risks to children, there are no government-issued

---

[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*

side-impact safety standards that the Booster Seats could meet or exceed, and KidsEmbrace devised its own side-impact standards without regard to safety.

### a. Continuing Act Tolling

63.     Beginning in 2002, KidsEmbrace continuously marketed and sold the Booster Seats to unsuspecting parents and caregivers. KidsEmbrace continuously represented these Booster Seats as safe for children weighing as little as 30 pounds and as having been tested and found to be safe in a side-impact crash. By continuously repeating these false representations and failing to disclose that the Booster Seats were unsafe for children weighing less than 40 pounds, were not tested to ensure safety in a side-impact collision, and were in fact inherently unsafe in a side-impact crash (exposing children to great risk of injury and death), KidsEmbrace engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that KidsEmbrace might seek to apply.

64.     Thus, at all relevant times, KidsEmbrace knew that it was concealing and misrepresenting material facts and knew of the material dangers posed by the Booster Seats but continued to tout the safety of these products in its marketing and sales materials. Plaintiff and other Class members' claims are not time barred.

### b. Fraudulent Concealment Tolling

65.     KidsEmbrace had a duty to disclose to Plaintiff and the Class members the true quality and nature of the Booster Seats and KidsEmbrace side-impact testing, including that the Booster Seats were unsafe, that they are in fact dangerous to children weighing less than 40 pounds or in a side-impact collision, that KidsEmbrace side-impact testing did not establish the safety of the Booster Seat, and that proper side-impact testing demonstrated the unsafe nature of the Booster Seats in a side-impact collision.

66.     This duty to disclose arose, among other things, due to KidsEmbrace representations that the Booster Seats were safe for children as small as 30 pounds and in side-impact collisions.

67.     KidsEmbrace knew about these safety risks at all relevant times. Prior to selling the Booster Seats, KidsEmbrace knew or, but for its extreme recklessness, should have known that the Booster Seats posed a risk to children weighing less than 40 pounds and were not safe in a side-impact collision and that KidsEmbrace's side-impact testing did not demonstrate that the Booster Seats were safe in a side-impact collision.

68.     Despite its knowledge of the defective design and danger of the products when used as intended, KidsEmbrace actively concealed this material information from Plaintiff and other Class members. KidsEmbrace continued to market the Booster Seats as safe for children weighing under 40 pounds and in side-impact collisions and as having been tested for safety in a side-impact collision, going so far as to mislabel the Booster Seats as "Side Impact Tested" at all relevant times.

69.     KidsEmbrace actively concealed the dangers of the Booster Seats and the true nature of their testing to continue to profit from their sale and prevent Plaintiff and other Class members from seeking redress.

70.     Plaintiff and the other Class members justifiably relied on KidsEmbrace to disclose the true nature of the products they purchased and the true nature of KidsEmbrace's testing, because the truth was not discoverable by Plaintiff and the other Class members through reasonable efforts. Any applicable statute of limitations has been tolled by KidsEmbrace's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

**c.  <u>Discovery Rule Tolling</u>**

71.     Plaintiff and other Class members, through the exercise of reasonable diligence, could not have discovered KidsEmbrace's wrongdoing. KidsEmbrace concealed and misrepresented the true nature of the Booster Seats and the safety risks in their use.

72.     Until recently, KidsEmbrace was able to conceal the fact that it knew

its Booster Seats pose a serious safety risk to children, especially those weighing less than 40 pounds, and that their testing in fact did not establish the safety of the Booster Seats in a side-impact collision. Plaintiff, Class Members, and the public at-large had no way of knowing these material facts until ProPublica published a robust article exposing certain facts regarding the safety of booster seats on February 6, 2020. While some of the information reported by ProPublica may have been disclosed in connection with earlier, individual litigation, it was sealed by the court or only available via a fee-based access system, such as CM/ECF, which the average person typically does not know how to access or navigate.

73.     Plaintiff and Class Members could not have reasonably discovered the true extent of KidsEmbrace's illegal conduct until ProPublica published the aforementioned article on February 6, 2020. Nor could Plaintiff and other Class members have known of facts that would have caused a reasonable person to suspect that KidsEmbrace knowingly failed to disclose material information about the dangers of the Booster Seats or the inadequacy of its testing to U.S. consumers.

74.     As such, no potentially relevant statute of limitations should be applied.

### d. **Estoppel**

75.     KidsEmbrace was under a continuous duty to disclose to Plaintiff and other Class members that the Booster Seats were not safe for children weighing less than 40 pounds, that the Booster Seats were not safe in the event of a side-impact collision, and that KidsEmbrace's testing did not establish that the Booster Seats were safe in a side-impact collision.

76.     KidsEmbrace knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Booster Seats and KidsEmbrace's testing from Plaintiff and other members of the Class.

77.     Thus, KidsEmbrace is estopped from relying on any statutes of limitations in defense of this action.

## VI.   CLASS ACTION ALLEGATIONS

78.   Plaintiff brings this action on behalf of herself and on behalf of all other members of the general public similarly situated, and thus seeks class certification under Federal Rule of Civil Procedure 23 of the following class (the "Nationwide Class") and subclass (the "North Carolina Subclass"), collectively, the "Classes":

> **Nationwide Class:** All persons within the United States who purchased a KidsEmbrace Booster Seat from the beginning of any applicable limitations period through the date of class certification.

> **North Carolina Subclass:** All persons in the state of North Carolina who purchased a KidsEmbrace Booster Seat from the beginning of any applicable limitations period through the date of class certification.

79.   Excluded from the Classes are KidsEmbrace and any entities in which KidsEmbrace or its parents, subsidiaries or affiliates have a controlling interest, and KidsEmbrace's member(s), manager, officers, agents, and employees. Also excluded from the Classes are the judges (district judge and magistrate judge) assigned to this action, members of the judges' staff, and any member of the judges' immediate family.

80.   Plaintiff reserves the right to amend the definitions of the Classes and add subclasses if discovery and further investigation reveal that the Classes should be narrowed, expanded, or otherwise modified.

81.   **Numerosity.** Members of the Classes are so numerous and geographically dispersed that joinder of all members is impracticable. At all relevant times, millions of KidsEmbrace Booster Seats were sold to millions of individual customers.

82.   **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, Plaintiff and the other class members were injured through the substantially uniform misconduct by KidsEmbrace. Plaintiff is advancing the same claims and legal theories on behalf

of herself and all other class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and of other class members arise from the same operative facts and are based on the same legal theories.

83. **Ascertainability.** Class members are readily identifiable from information and records in the possession of KidsEmbrace and third-party merchants like Amazon, Target, Walmart, Kmart, Costco, and Babies R Us.

84. **Adequacy**. Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the other class members she seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously. The class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

85. **Commonality.** Questions of law and fact common to the members of the Classes predominate over questions that may affect only individual class members because KidsEmbrace acted on grounds generally applicable to the entire Classes, thereby making damages with respect to the Classes as a whole appropriate. Such generally applicable conduct is inherent in KidsEmbrace's wrongful actions. Questions of law and fact common to the Classes include, but are not limited to:

- Whether KidsEmbrace's Booster Seats are unsafe for child occupants weighing less than 40 pounds;
- Whether KidsEmbrace owed a duty of care to Plaintiff and members of the Classes;
- Whether KidsEmbrace was negligent or grossly negligent in representing that the Booster Seats were safe for child occupants weighing less than 40 pounds;
- Whether KidsEmbrace was negligent or grossly negligent in representing the Booster Seats were side-impact tested and safe;

- Whether KidsEmbrace represented through advertising, marketing, and labeling that the Booster Seats were safe for child occupants weighing less than 40 pounds and/or safe in a side-impact crash;

- Whether KidsEmbrace acted to conceal that the Booster Seats are unsafe for children under 40 pounds;

- Whether KidsEmbrace acted to conceal that the Booster Seats are unsafe in side-impact crashes and that its side-impact testing did not show that the Booster Seats were safe in side-impact collisions;

- Whether KidsEmbrace's failure to disclose the safety risks posed by use of the Booster Seats and the inadequacy of its testing was unfair, deceptive, fraudulent, or unconscionable;

- Whether KidsEmbrace's representations and/or omissions in advertising, marketing, and labeling are likely to mislead a reasonable consumer;

- Whether KidsEmbrace knew that its representations and/or omissions in advertising, marketing, and labeling were false, deceptive, or misleading;

- Whether KidsEmbrace engaged in unlawful, fraudulent, or unfair business practices;

- Whether KidsEmbrace violated statutes and/or common law as described herein;

- Whether KidsEmbrace was unjustly enriched at the expense of Plaintiff and Class Members;

- Whether KidsEmbrace should be ordered to disgorge all or part of the ill-gotten profits it received from the sales of the Booster Seats;

- Whether KidsEmbrace breached express warranties to Plaintiff and Class Members;
- Whether Plaintiff and the other Class members are entitled to damages, and in what amount; and
- Whether Plaintiff and the other Class members are entitled to declaratory or injunctive relief.

86.   **Predominance and Superiority.** Questions of law and fact common to the members of the Classes predominate over questions that may affect only individual class members because KidsEmbrace acted on grounds generally applicable to the entire Classes, thereby making damages with respect to the Classes as a whole appropriate. Such generally applicable conduct is inherent in KidsEmbrace's wrongful actions. Thus, a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against KidsEmbrace, making it impracticable for class members to individually seek redress for KidsEmbrace's wrongful conduct. Even if class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

87.   Declaratory and Injunctive Relief. KidsEmbrace will continue to commit the unlawful practices alleged herein, and class members will remain at an unreasonable and serious safety risk as a result of the Booster Seats. KidsEmbrace

has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as requested in the Prayer for Relief below, with respect to the members of the Classes as a whole.

88.     Further, KidsEmbrace has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Classes as a whole is appropriate under Federal Rules of Civil Procedure.

## VII.   CLAIMS FOR RELIEF

### <u>COUNT I</u>

### COMMON LAW FRAUD

### *(On Behalf of Plaintiff and the Nationwide Class*
### *against Defendant KidsEmbrace)*

89.     Plaintiff repeats and realleges alleged paragraphs 1 through 88, as if fully alleged.

90.     Plaintiff asserts this claim for common law fraud on an affirmative misrepresentation theory on behalf of herself and the Nationwide Class against KidsEmbrace.

91.     As detailed above, KidsEmbrace made false or misleading statements to Plaintiff and class members regarding the safety of the Booster Seats, including age and weight limits, and the side-impact testing. These misrepresentations include:

- Misrepresenting that the Booster Seats are safe for children who weigh as little as 30 pounds;
- Misrepresenting that the Booster Seats are "SIDE IMPACT TESTED" and provide side-impact protection;
- Misrepresenting that KidsEmbrace's Booster Seats are "engineered and tested and crash tested to meet or exceed U.S.

safety standards";

- Misrepresenting that KidsEmbrace's Booster Seats are subjected to "a combination of the most rigorous crash tests that helps to protect your child in frontal, side, rear, and rollover crashes"; and

- Misrepresenting that the headrest on the Booster Seats "helps keep your child secure" in a side-impact collision.

92.    KidsEmbrace made these statements through, among other things, labels on the Booster Seats and on the packaging that described the equipment and features of the Booster Seats, and in the owners' manuals, warranty booklets, product brochures, advertisements, and other promotional materials for the Booster Seats.

93.    KidsEmbrace's representations were false and misleading because: (a) the Booster Seats are not safe for use by children under four years or 40 pounds; (b) KidsEmbrace's own testing showed that use by such children makes them susceptible to serious bodily injury or death in the event of a car crash; (c) the Booster Seats do not meet or exceed federal side-impact safety standards, because no such standards exist; (d) KidsEmbrace's testing does not show that the Booster Seats would provide any appreciable safety to its child occupants in the event of a side-impact crash; and (e) the headrest on the Booster Seats does not help keep child occupants secure in a side-impact collision.

94.    KidsEmbrace knew the representations were false and intended that Plaintiff and Class members rely on them.

95.    These misrepresentations were material to Plaintiff's and Class members' decision to acquire the Booster Seats.

96.    Plaintiff and members of the Nationwide Class and the State Subclasses justifiably relied on KidsEmbrace's misrepresentations of material facts regarding the Booster Seats, as described above.

97.    Plaintiff decided to purchase a Booster Seat based in part on the KidsEmbrace's representations regarding the safety of the Booster Seats and the specifications.

98.    KidsEmbrace's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate. Because KidsEmbrace's deceptive and unfair conduct is ongoing, injunctive relief is necessary and proper.

## COUNT II
## QUASICONTRACT
### *(On Behalf of Plaintiff and the Nationwide Class*
### *against Defendant KidsEmbrace)*

99.    Plaintiff repeats and realleges paragraphs 1 through 88, and 91 through 98, as if fully alleged.

100.   Plaintiff brings this count on behalf of herself and members of the Nationwide Class.

101.   KidsEmbrace knowingly accepted and enjoyed the benefits of Plaintiff and class members' purchasing or causing the purchase of Booster Seats.

102.   KidsEmbrace should not be able to retain the benefit of the funds paid because the members of the Classes rendered payment with the expectation that the Booster Seats would be as represented and warranted—a well-designed product that was thoroughly tested and provided safety in a side-impact car crash.

103.   KidsEmbrace misrepresented and omitted material facts regarding the actual dangers posed by the flawed design of the Booster Seat, the meaningless side-impact testing of the Booster Seats, and the illusory protection provided by the Booster Seats in a side-impact car crash. Through those misrepresentations and omissions, the Plaintiff and members of the Classes purchased the Booster Seats through which KidsEmbrace profited.

104.   Equity dictates that KidsEmbrace's ill-gotten gains be disgorged, and

that the Plaintiff and members of the Classes are entitled to restitution.

## COUNT III

### NEGLIGENT MISREPRESENTATION

*(On Behalf of Plaintiff and the Nationwide Class*
*against Defendant KidsEmbrace)*

105.   Plaintiff repeats and realleges paragraphs 1 through 88, 91 through 98, and 101 through 104, as if fully alleged.

106.   Plaintiff brings this count on behalf of herself and members of the Nationwide Class.

107.   At all relevant times, KidsEmbrace represented to the public in its websites, marketing materials, and packaging of the Booster Seats that the products were safe, thoroughly tested, and provided a safety benefit in side-impact car crashes.

108.   KidsEmbrace's representations were material to the purchasing decisions of Plaintiff and Class members.

109.   Plaintiff relied on KidsEmbrace's misrepresentations in purchasing and using the Booster Seats.

110.   At the time of sale, KidsEmbrace should have known that these representations about the safety of the Booster Seats were false.

111.   Based on these representations of material fact, KidsEmbrace had a duty to disclose the truth about the safety characteristics of the Booster Seats and the lack of any federal side-impact testing standards. Despite this duty, KidsEmbrace failed to exercise reasonable care or competence in communicating information regarding the testing design and safety of the Booster Seats to Plaintiff and Class members.

112.   These misrepresentations were made uniformly to the consuming public, including the members of the Classes. Plaintiff and members of the Classes relied on KidsEmbrace's misrepresentations, and would not have purchased and/or

owned a Booster Seat had KidsEmbrace not made the misrepresentations about its design, safety and testing.

113.   As a result of KidsEmbrace's negligent misrepresentations concerning the Booster Seat, Plaintiff and members of the Classes have been damaged.

## COUNT IV

### VIOLATIONS OF NORTH CAROLINA
### UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### N.C. Gen. Stat. §§ 75-1.1, *et seq.*

**(*On behalf of Plaintiff and the Nationwide Class, or in the alternative the North Carolina Subclass, against Defendant KidsEmbrace*)**

114.   Plaintiff repeats and realleges paragraphs 1 through 88, 91 through 98, 101 through 104, and 107 through 113 as if fully alleged.

115.   Plaintiff brings this count on behalf of herself and members of the Nationwide Class, or in the alternative, on behalf of herself and members of the North Carolina Subclass.

116.   At all times relevant herein, KidsEmbrace was engaged in commerce in the State of North Carolina.

117.   The conduct of KidsEmbrace as set forth herein is unethical, oppressive, unscrupulous, and substantially injurious to the consumers of North Carolina; and has the capacity and tendency to deceive the average consumer.

118.   KidsEmbrace's false, misleading and deceptive statements and representations of fact were and are directed to consumers.

119.   KidsEmbrace's false, misleading and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

120.   KidsEmbrace's false, misleading and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest

121.   Plaintiff and class members have been injured because: (a) they would not have purchased the Booster Seats had they known that the Booster Seats were not safe for children weighing less than 40 pounds and had not been side-impact-tested; (b) they paid a price premium for the Booster Seats based on KidsEmbrace's false and misleading statements; and (c) the Booster Seats did not have the characteristics and benefits as promised.

122.   As a result of KidsEmbrace's false, misleading, and deceptive statements and representations of fact, Plaintiff and class members have suffered economic injuries.

123.   Plaintiff and class members suffered an ascertainable loss caused by KidsEmbrace's misrepresentations because they paid more for the Booster Seats than they would have had they known the truth about the Booster Seats.

124.   The above-described conduct violated N.C. Gen. Stat. § 75-1.19(a), including:

> A.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;
>
> B.   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and
>
> C.   Advertising goods or services with intent not to sell them as advertised.

125.   As a result, Plaintiff and class members have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Booster Seats or the difference in value between Booster Seats as advertised and the Booster Seats as actually sold.

126.   Plaintiff and class members suffered actual injury as a result of KidsEmbrace's unfair actions.

127.   Plaintiff and class members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution, injunctive relief, punitive damages, and reasonable attorneys' fees and costs.

128.   KidsEmbrace's actions were in or affecting commerce and constitute unfair and deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General Statutes.

129.   Plaintiff and class members have been damaged and are entitled to recover treble damages and attorneys' fees incurred in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes, respectfully requests that this Court enter an Order:

a.  Certifying the Nationwide Class and/or the North Carolina Subclass and appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel under Rule 23 of the Federal Rules of Civil Procedure;

b.  Declaring that KidsEmbrace's failure to disclose the dangers of the Booster Seat was negligent, deceptive, unfair, and unlawful;

c.  Finding that KidsEmbrace's conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

d.  Finding that KidsEmbrace's conduct was in violation of the statutes and common law referenced herein;

e.  Awarding Plaintiff and the other class members actual, compensatory, and consequential damages;

f.  Awarding Plaintiff and the other class members statutory damages, treble damages, and penalties, as allowed by law;

g.  Awarding Plaintiff and the other class members restitution and disgorgement;

h.  Awarding Plaintiff and the other class members pre-judgment and post-

judgment interest;

i. Awarding Plaintiff and the other class members reasonable attorneys' fees costs and expenses; and

j. Granting such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: February 26, 2021                    Respectfully submitted,


/s/ *Christopher L. Rudd*
**THE RUDD LAW FIRM**
Christopher L. Rudd (SBN 130713)
E-mail: clrudd@ruddlawla.com
4650 Sepulveda Boulevard, Suite 205
Sherman Oaks, CA 91403
Tel.: 310.663.0705
Fax: 310.359.0258

Gary E. Mason*
E-mail: gmason@masonllp.com
Danielle Perry (SBN 292120)
E-mail: dperry@masonllp.com
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW
Suite 305
Washington, D.C. 20016
Tel: (202) 429-2290
Fax: (202) 42902294

Melissa R. Emert*
E-mail: memert@kgglaw.com
Gary S. Graifman*
E-mail: ggraifman@kgglaw.com
**KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Telephone: (845) 356-2570
Facsimile: (845) 356-4335

*Counsel for Plaintiff*
*\*Pro hac vice anticipated*